# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs at Knoxville February 27, 2013

## STATE OF TENNESSEE v. PAULA CROWDER

**Appeal from the Circuit Court for Hickman County**
**No. 11-5159CR     Michael W. Binkley, Judge**

**No.  M2012-02396-CCA-R3-CD - Filed April 3, 2013**

The Defendant, Paula Crowder, pled guilty to vehicular assault, a Class D felony, and was sentenced to serve three years in the Department of Correction (DOC).  She challenges the trial court's denial of probation and alternative sentencing.  After consideration of the applicable authorities and the record on appeal, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

Michael Joseph Flanagan, Nashville, Tennessee, for the appellant, Paula Crowder.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Kim R. Helper, District Attorney General; and Michael J. Fahey, Assistant District Attorney General; for the appellee, State of Tennessee.

## OPINION

### FACTUAL BACKGROUND

The Defendant was indicted on October 5, 2011, for vehicular assault.  The indictment arose out of a traffic collision involving the Defendant; it alleged that the Defendant, due to her intoxication, recklessly caused serious bodily injury to the victim, Mrs. Carroll.  The Defendant pled guilty[1] to the offense as charged, and sentencing was reserved for the trial

---

[1]The transcript from the guilty plea hearing is not included in the record.  However, the record evinces that the State agreed to nolle another charge, resulting from the Defendant's failure to appear at an earlier court date in this case, in exchange for her plea to vehicular assault.

court.

A sentencing hearing was held on October 9, 2012. Officer Charles Pierce, employed with the Centerville Police Department, testified that he was off duty when the Defendant's April 21, 2011 collision occurred but that he was one of the officers who responded to the 8:11 p.m. call that night. Officer Pierce described the location and layout of the scene. He also introduced some photographs of the Defendant's and the victim's damaged cars at the scene and a diagram he made of the progression of the collision. Officer Pierce explained that the Defendant caused the accident when her car crossed the center line and hit the victim's car head on. The Defendant was ejected from her car and immediately "lifeflighted" to the hospital. The victim, however, was pinned in her car, and the fire department had to extract her before she could also be "lifeflighted" to the hospital. Officer Pierce testified that the Defendant's blood was drawn at the hospital, approximately four hours after the accident, and the test revealed that she had a blood alcohol content (BAC) of .07 percent and that she tested positive for methamphetamine.

The victim testified that she was on her way to work as a private duty nurse when the collision occurred. She explained that the accident occurred when the Defendant veered into her lane, eventually striking her car and running it into a ditch. The victim was pinned inside her car, and it took approximately forty-five minutes for firemen to extract her. She was in the hospital for approximately three weeks and, afterwards, was in a nursing home for three months. The victim described the effect of her extensive injuries: she lost her job as a nurse; she cannot stand due to the neuropathy in her feet[2]; she cannot drive; she has post-traumatic stress disorder (PTSD); she suffers from depression; she has suicidal thoughts; she has physical disfigurement; and she has permanent impairment in her ankles, left elbow, and back. The victim explained that she still has "two more surgeries to go" to remove scar tissue from her ankles but that her doctors said that she had "reached the maximum medical improvement." She asked the trial court to sentence the Defendant to the maximum, explaining that the Defendant's poor choices hurt both families involved and that the Defendant was not remorseful.

The Defendant testified on her own behalf. She stated that she did not remember anything from the collision other than going to work that day. According to the Defendant, she had a stroke that day either at work or just before the collision. She explained that she spent three months and two days in the hospital following the collision and that she too sustained extensive injuries. She further explained that she had undergone eighteen surgeries, had a brain injury, had lost an ear, and was scalped as a result of the collision and

[2]The victim explained that her ankles were crushed during the accident, that it "messed up all the nerve endings in [her] legs," and that she still experienced that nerve damage at the time of trial.

that she did not remember anything about that day. The Defendant agreed that because alcohol was found in her blood at the hospital, one could reasonably conclude that she had consumed alcohol that day. She expressed remorse for the pain she had caused the victim and agreed to pay restitution, to take an alcohol and drug class and follow any recommendations from the assessment, and to follow any other requirements imposed by the trial court.

On cross-examination, she admitted that she had consumed marijuana from 2005-2010 but explained that she had quit on her own. She also admitted that she first started using alcohol in 1989 but stated that she had not used alcohol since the collision and denied having a drinking problem. The Defendant further admitted that she had used methamphetamine no more than six times in 2011 prior to the collision in April, explaining "there was a time where [she] may have done it maybe two or three tim[]es" over a one, two, or three day period. When asked why she emphasized that she used the drug no more than six times, the Defendant explained, "Because I know it's expensive, and why do it? I mean, it doesn't do nothing to me, and I couldn't tell that I did it." When asked about the methamphetamine found in her blood after the collision, she stated, "Yes, it could have been . . . . but there wasn't a lot. I guarantee it wasn't because I had not done enough." She conceded her memory loss of that day but stated, "if I did do [methamphetamine], I don't remember it. I couldn't have done it that day." The Defendant denied having a substance abuse problem but stated, "I guess that's to be determined by the person that evaluates me."

The trial court sentenced the Defendant, as a Range I, standard offender, to serve three years' incarceration in the DOC. The trial court found that one enhancement factor, that the Defendant had a previous history of criminal behavior – her use of marijuana for five years and her use of methamphetamine six times in 2011 – in addition to those necessary to establish the range, and no mitigating factors applied. The trial court explained that while it would not enhance the Defendant's sentence based on the serious bodily injury inflicted upon the victim, it could not overlook the permanent impairment, the physical disfigurement, and the mental impact these ongoing issues have had on the victim's life. The trial court then noted that its "major concern" was that the Defendant had not taken responsibility for the real, underlying problem with substance or alcohol abuse. Considering the principles of sentencing and other sentencing considerations, the trial court found that incarceration was necessary to prevent depreciating the seriousness of the offense and denied alternative sentencing.

This appeal followed.

ANALYSIS

The Defendant contends that the trial court improperly denied her full probation or some other form of alternative sentence based solely on the seriousness of the offense. The State responds that the trial court also based its decision on the Defendant's lack of potential for rehabilitation and, as such, did not abuse its discretion in ordering the Defendant to serve her three-year sentence in the DOC.

*A. Missing Guilty Plea Hearing Transcript*

As a preliminary matter, we previously mentioned that the guilty plea transcript was not included in the record for our review. However, there is sufficient information in the sentencing hearing and other portions of the record to facilitate meaningful review of the issue presented on appeal. State v. Caudle, 388 S.W.3d 273, 279 (Tenn. 2012) (citing State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991)). Therefore, we will address the issue and presume that the guilty plea hearing transcript would support the trial court's decision. Id.

*B. Denial of Full Probation or Alternative Sentence*

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider: (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b). The 2005 amendments to the Sentencing Act "served to increase the discretionary authority of trial courts in sentencing. State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012). Currently, upon a challenge to the denial of probation or any other alternative sentence, it is the duty of this court to analyze the issues under "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Bise, 380 S.W.3d at 707; Caudle, 388 S.W.3d at 278 (extending this standard to a trial court's grant or denial of either probation or some other form of an alternative sentence). Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," Tennessee Code Annotated section 40-35-102(1), a punishment sufficient "to prevent crime and promote respect for the

-4-

law," Tennessee Code Annotated section 40-35-102(3), and consideration of a defendant's "potential or lack of potential for . . . rehabilitation," Tennessee Code Annotated section 40-35-103(5).  See State v. Carter, 254 S.W.3d 335, 344 (Tenn. 2007).

The Defendant was eligible for probation because the "sentence actually imposed upon [her was] ten (10) years or less." Tenn. Code Ann. § 40-35-303(a), (b).  Thus, the trial court was required to consider probation as a sentencing option. Tenn. Code Ann. § 40-35-303(a).  However, no criminal defendant is automatically entitled to probation as a matter of law. State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997). The defendant has the burden of establishing his or her suitability for full probation. See State v. Carter, 254 S.W.3d 335, 347 (Tenn. 2008) (citing Tenn. Code Ann. § 40-35-303(b)).  A defendant must demonstrate that probation will "subserve the ends of justice and the best interests of both the public and the defendant." Carter, 254 S.W.3d at 347 (quoting State v. Housewright, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)).  Among the factors applicable to probation consideration are the circumstances of the offense; the defendant's criminal record, social history, and present condition; the deterrent effect upon the defendant; and the best interests of the defendant and the public. State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978).

Additionally, a defendant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. See Tenn. Code Ann. § 40-35-102(6). Following the June 7, 2005 amendments to our Sentencing Act, no longer is any defendant entitled to a presumption that he or she is a favorable candidate for alternative sentencing. State v. Carter, 254 S.W.3d  335, 347 (Tenn. 2008).

In determining a defendant's suitability for alternative sentencing, the trial court should consider whether:

>(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

>(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

>(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1)(A)-(C).  A trial court should also consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence

would be appropriate. Tenn. Code Ann. § 40-35-103(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). Ultimately, in sentencing a defendant, a trial court should impose a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

In the instant case, the trial court denied probation and any other form of alternative sentence, concluding that incarceration was necessary to avoid depreciating the seriousness of the offense. The trial court explained that its "major concern" was that the Defendant had not "really taken responsibility for the real, underlying problem with substance abuse or alcohol abuse[,]" and this fact could reasonably be construed as illustrating the Defendant's lack of potential for rehabilitation. The record reflects that the trial court took into account the sentencing considerations and, although minimally on the issue of probation and alternative sentencing, made sufficient findings to show that it had "a reasoned basis for exercising his own legal decisionmaking authority." Bise, 180 S.W.3d at 706. Our review of the record reveals nothing that rebuts the presumption of reasonableness afforded to the trial court. We, therefore, conclude that the trial court did not abuse its discretion by ordering the Defendant to serve her three-year sentence in confinement.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE